IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

KIMBERLY TAYLOR,

    Plaintiff,

v.                                                    Case No.:   23cv000175
                                                            JURY DEMANDED

THRUSH AIRCRAFT, LLC,

    Defendant.
_____/

## COMPLAINT

Plaintiff, KIMBERLY TAYLOR, files this complaint against Defendant, THRUSH AIRCRAFT, LLC ("THRUSH AIRCRAFT"), and alleges the following:

## JURISDICTION

1. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1331 because KIMBERLY TAYLOR'S claims arise under the laws of the United States.

2. This Court has personal jurisdiction over the parties to this action because Plaintiff subjects herself to the jurisdiction of this Court and over Defendant, THRUSH AIRCRAFT, pursuant to 28 U.S.C. § 1391(d), because it is registered to do business in the State of Georgia, has an office for the transaction of business within the judicial district of this Court, and would be subject to personal jurisdiction in this Court's judicial district if the Court's judicial district were a separate state;

and because, in accordance with 29 U.S.C. § 2617(a)(2); 42 U.S.C. § 12117(a), and 42 U.S.C. § 2000e-5(f)(3), the unlawful employment practices alleged in this civil action occurred within this Court's judicial district.

## VENUE

3. Venue of this action is properly in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within the judicial district of this Court, and Defendant is subject to the Court's personal jurisdiction with respect to this civil action.

## PARTIES

4. Plaintiff, KIMBERLY TAYLOR, is domiciled in Dougherty County, Georgia.

5. Defendant, THRUSH AIRCRAFT, is a Georgia limited liability company with a principal address of 300 Old Pretoria Road, Albany, Dougherty County, GA 317213, and doing business at the same address. It is registered to do business in the State of Georgia, and its registered agent is John McGoldrick, 240 Third Street, Macon, GA 31201.

## CONDITIONS PRECEDENT

6. The Plaintiff has complied with all administrative prerequisites necessary to file a complaint pursuant to The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and/or Title VII, including filing a charge of

discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), and received a notice of right to sue letter concerning her charge, which is attached hereto as Exhibit A. This action is timely brought thereafter.

## STATEMENT OF THE ULTIMATE FACTS

7. Plaintiff began her employment with Defendant in or around April 2021 as a Human Resources Director.

8. From the time she began her employment with Defendant until she was terminated, Plaintiff was the only African American person on Defendant's executive team.

9. Throughout Plaintiff's employment, Defendant's executive staff made statements to her and took actions against her that were racially discriminatory, as specifically described below.

10. At the outset of Plaintiff's employment, Defendant's executive staff required her to watch the movie "Remember the Titans," and fill out a worksheet inquiring of Plaintiff's position/beliefs regarding the movie's themes, including race relations.

11. On numerous occasions during Plaintiff's employment members of Defendant's executive staff made racially charged statements regarding a predominantly African American neighborhood in Albany, Georgia, to wit:

    a. Defendant's Chief Executive Officer instructed employees, including

        Plaintiff, not to recruit potential employees from that predominantly African American neighborhood and instead to recruit only from the other side of town.

    b. Defendant's Director of Quality stated in an executive staff meeting that the Company should not advertise in that neighborhood. When Plaintiff asked for clarification, Defendant's Director of Quality stated that Plaintiff knew what he meant and that the Company should advertise in areas where there are people who actually want to work.

12. Defendant excluded Plaintiff from the Company's executive team photograph, which was published in a magazine, even though Plaintiff was a part of the executive team. The photograph included only the white males on the executive team.

13. Additionally, Plaintiff was diagnosed with a serious autoimmune condition in or around 2007, which presents symptoms sporadically with "flare-ups," usually when Plaintiff experiences periods of high stress.

14. Due to the hostile work environment created by Defendant, as described above, Plaintiff's blood pressure increased significantly in connection with her autoimmune condition. As a result, Plaintiff developed cataracts in both eyes.

15. On or around September 3, 2022, Defendant's CEO, Mark McDonald, asked Plaintiff whether she wanted to continue working for the Company, given her

health concerns. Plaintiff told Mr. McDonald that she wished to continue working for the Company.

16. On or around September 16, 2022, Plaintiff submitted a Family Medical Leave Act ("FMLA") form advising Defendant of her autoimmune condition and requesting one day of FMLA leave every two to three months.

17. Approximately one week after Plaintiff submitted her FMLA application, Defendant's CFO, Clint Hubbard, visited Plaintiff's office and attempted to persuade Plaintiff to rescind her FMLA application. Plaintiff pointed out that she felt as though the Company did not care about her health to which Mr. Hubbard responded that Plaintiff should consider going to work for another company.

18. Several weeks later, Mr. Hubbard asked Plaintiff if she had changed her mind about her FMLA application, to which Plaintiff stated no and expressed her intent to exercise her rights under the FMLA. In response, Mr. Hubbard threw his hands up in the air and begrudgingly stated that he would approve her request.

19. On or around November 23, 2022, Plaintiff underwent surgery for the cataracts in her right eye. When Plaintiff returned to work the following Monday, Defendant's CEO informed Plaintiff that her employment had been terminated effective immediately.

**COUNT I**
**DISCRIMINATION AND RETALIATION IN VIOLATION OF**
**THE FAMILY AND MEDICAL LEAVE ACT**

20.     Plaintiff incorporates by reference paragraphs 1-19.

21.     At all times material there was in full force and effect the Family and Medical Leave Act, 29 U.S.C. § 2601, et. seq. ("FMLA"), which makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's FMLA rights.

22.     At the time Plaintiff notified Defendant of her serious health condition within the meaning of FMLA, Plaintiff was an eligible employee under the FMLA because she was employed for at least 12 months, worked at least 1250 hours during the 12 months preceding her attempt to utilize her rights provided by the FMLA, and worked at a location for Defendant where Defendant employed more than 50 employees within a 75-mile radius.

23.     Defendant was and is an employer under the FMLA because it was and is engaged in commerce or in an industry affecting commerce employing 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding year.

24.     Plaintiff was entitled to the benefits under the FMLA at that time because she had a serious health condition within the meaning of the FMLA, because she suffered from an illness that involved inpatient care at a hospital, and/or because

she suffered from an illness that required continuing treatment by a health care provider.

25. Defendant violated the FMLA by interfering, restraining, and denying Plaintiff's request for FMLA leave, and for discharging her for utilizing her rights provided by the FMLA.

26. The violations of the FMLA by Defendant against Plaintiff were done with malice or with reckless indifference to Plaintiff's federally protected rights.

27. To remedy Defendant's violations of the FMLA, Plaintiff is entitled to damages in the form of back pay, together with interest at the prevailing rate; an additional equal amount as liquidated damages; a declaration that Defendant violated the FMLA; reinstatement to her employment position, and/or front pay; the reasonable value of benefits lost, together with interest thereon at the prevailing rate; the cost of all medical expenses that would have been covered by Plaintiff's health insurance benefits; compensatory damages; costs and reasonable attorneys' fees.

## COUNT II
## DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

28. Plaintiff incorporates by reference paragraphs 1-19.

29. At all times material, there was in full force and effect the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), which prohibits a "covered entity" from discriminating against a "qualified individual on the basis of

a disability in regard to . . . discharge of employees, . . . and other terms, conditions, and privileges of employment."

30. The prohibition against discriminating expressly includes "not making reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability. . ."

31. Defendant is a covered entity under the ADA because it is an employer that is engaged in an industry affecting commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year.

32. Plaintiff is a qualified person with a disability because she is an employee with a physical impairment that substantially limits one or more major life activities, who can nevertheless perform the essential functions of her job with or without reasonable accommodations.

33. Defendant discriminated against Plaintiff in violation of the ADA on the basis of a serious medical condition because it failed to accommodate her serious medical condition, or even attempt the required "interactive process" with her to discuss accommodation, and terminated her because of her disability.

34. Additionally, the violations of the ADA by Defendant against Plaintiff were done with malice or with reckless indifference to Plaintiff's federally protected rights.

35. To remedy Defendant's violations of the ADA, Plaintiff is entitled to the same remedies available to a victim of a violation of Title VII, namely, a declaration that Defendant violated the ADA; reinstatement to her employment and/or front pay; back pay with interest thereon at the prevailing rate; the reasonable value of all benefits lost, with interest thereon at prevailing rates; compensatory damages; punitive damages; costs and reasonable attorneys' fees.

## COUNT III
## RACE DISCRIMINATION

36. Plaintiff incorporates by reference paragraphs 1-19.

37. This is an action against Defendant for discrimination based upon race brought under 42 U.S.C. §1981 and 42 U.S.C. §2000(e), et seq.

38. Plaintiff has been the victim of discrimination on the basis of her race in that Defendant treated her differently than similarly situated employees who were outside of her protected class. Plaintiff has been subject to hostility and poor treatment on the basis of, at least in part, her race.

39. Defendant is liable for the differential treatment towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff.

40. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

41. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a race-based nature and in violation of the laws set forth herein.

42. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein led, at least in part, to Plaintiff's termination.

43. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of 42 U.S.C. §1981 and 42 U.S.C. § 2000(e), et seq.

44. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to punitive damages and equitable/injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays:

a) That this Court cause proper process to issue, requiring the Defendant to answer this Complaint;

b) That this Court empanel a jury to try all issues so triable;

c) That this Court grant equitable relief against Defendant under the applicable count set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

d) Enter judgment against Defendant and for Plaintiff awarding damages to Plaintiff from Defendant;

e) Enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of the laws enumerated herein; and

f) Such other, further relief to which Plaintiff may be entitled.

Respectfully submitted this 5th day of October, 2023.

**BROOKS, LeBOEUF, FOSTER & GWARTNEY, P.A.**

__/s/ Ryan P. Molaghan_____
Ryan P. Molaghan
Georgia Bar Number 842314
RyanM@TooMuchAtStake.com
909 East Park Avenue
Tallahassee, Florida 32301
850-222-2000
*Attorneys for Plaintiff*